FILED
SUPERIOR COURT
OF GUAM

2014 MAY -9 PM 2:30

CLERK OF COURT
BY:

**IN THE SUPERIOR COURT OF GUAM**

**SMALL CLAIMS DIVISION**

| | |
|---|---|
| JOSEPH L. BAMBA, | )     Small Claims Case No. SD0401-13 |
|        Plaintiff, | )     **DECISION AND ORDER** |
|        vs. | ) |
| JOEL JOSEPH, MICRONESIA EXOTIC ANIMAL SPECIALTY SERVICES, INC. dba WISE OWL ANIMAL HOSPITAL, | ) |
|        Defendant. | ) |

This matter came before the Court upon Plaintiff Joseph L. Bamba's Motion for Relief from Order and Renewed Objection to Application of the Medical Malpractice Act to a Consumer Protection Act Cause of Action which was filed on December 30, 2013. Plaintiff is represented by Assistant Attorney General Benjamin M. Abrams. *Pro Se* Defendant Joel Joseph *et al* has not filed an Opposition to the motion. Notwithstanding Plaintiff's request for oral argument, the Court exercises its discretion and denies the request. After consideration of the arguments presented by the Plaintiff, the Court hereby issues its decision and order.

## BACKGROUND

### Procedural Background

In order to provide context to the motion before the Court, a brief description of the procedural history is appropriate. The Court had previously heard argument by the parties on the applicability of the Medical Malpractice Mandatory Arbitration Act, as found in Title 10 GCA §§10101 *et seq.*, on November 7th and 14th, 2013. This issue was raised upon Defendant's oral

motion to stay proceedings pursuant to this Act. The Court made an oral pronouncement that the mandatory arbitration provision of the Act applied and, at the request of Plaintiff, the Court subsequently issued a written Decision and Order. *See* Decision and Order, <u>Bamba v. Wise Owl</u>, SD0401-13 (Dec. 26, 2013).

Unbeknownst to the Court, Plaintiff had filed a written opposition to the Defendant's motion to stay on December 20, 2013. Because the opposition was filed in Hagåtña, it did not make its way to the Magistrate at the Northern Court Satellite until after the Court's written Decision and Order was issued.[1]

Shortly after the Court's Decision and Order was issued the Plaintiff filed the instant Motion for Relief from Order and Renewed Objection to Application of the Medical Malpractice Act to a Consumer Protection Act Cause of Action. Plaintiff seeks relief on the basis of GRCP Rule 60(b)(6).

**Factual Background[2]**

On May 26, 2013, Plaintiff, by and though the Consumer Counsel of the Attorney General of Guam, filed a complaint in small claims against the Defendant. Plaintiff sought the recovery of $200.00 paid as an advance on fees for veterinary services rendered by the Defendant. Plaintiff alleged that Defendant performed a surgical procedure on the wrong leg of his animal. Consequently, Plaintiff alleged that because of the negligence of Defendant he is entitled to the refund of the fee. As grounds for the claim Plaintiff asserted a breach of warranty and agreement with the consumer; and commission of false, misleading and deceptive practice

---

[1] Although it must be noted that Plaintiff's submission of the written opposition to the Defendant's motion to stay proceedings was not timely filed and could be ignored by the Court; the Court will give Plaintiff and his counsel the benefit of the doubt that the opposition was submitted in good faith and out of concern that the Court's eventual decision and order on the matter of the stay was not issued as expeditiously as the parties ostensibly believed it would be.

[2] The Court's factual recitation contained in the Decision and Order of December 26, 2013 included other procedural matters which will not be repeated herein.

by Defendant which induced Plaintiff to pay in advance for consumer services. The Consumer Counsel of the Office of the Attorney General of Guam is statutorily authorized to represent consumers in in actions involving the Deceptive Trade Practices – Consumer Protection Act, as contained in Title 5 GCA §§32101 *et seq*. At the Answering on June 25, 2013, the allegations of the complaint were denied and trial was originally set for August 30, 2013.

On July 9, 2013, Defendant filed a counterclaim seeking the remaining fee for professional services rendered. The Answering of the counterclaim was also scheduled for August 30, 2013; however, on that date, the Defendant was not present. Consequently, on October 10, 2013, a Default Entry by Clerk was filed.

The matter was eventually transferred to the Magistrate Judge and a status hearing was scheduled for November 7, 2013, to determine the exact procedural posture of the case and to determine whether trial should proceed. At the hearing, Defendant asserted that because the underlying claim for restitution was based upon the negligent medical services; the provisions of the Medical Malpractice Mandatory Arbitration Act (hereinafter 'MMMAA") apply and the matter should be stayed. The Court agreed and ordered proceeding stayed and for the parties to begin the arbitration procedures provided by the MMMAA. *See* Decision and Order, Dec. 26, 2013.

## DISCUSSION

### I.

Preliminarily, the Court notes that the Defendant failed to file an opposition to the Plaintiff's motion. The Local Rules of the Superior Court provide that oppositions to motions may be filed within 28 days of the filing of the motion. *See* CVR 7.1(d)(1). No opposition has been filed but nothing prevents the Court from proceeding to address the motion. The Local

Rules provide that the Court need not consider oppositions to motions that do not comply with the Rules. *See* CVR 7.1(f) and (k).

Additionally, although Plaintiff has requested for oral argument on the motion; the Court finds that Plaintiff's motion adequately articulates its argument and that oral argument is not necessary for its disposition. *See* CVR 7.1(e)(2)(D).

## II.

Plaintiff seeks relief from the Court's December 26, 2013, Order pursuant to Guam Rules of Civil Procedure Rule 60(b)(6) which states:

> (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (6) any other reason justifying relief from the operation of the judgment.

GRCP 60(b)(6). The Court must consider that "Rule 60(b)(6) 'provides for extraordinary relief and requires a showing of exceptional circumstances.'" *Parkland Development, Inc. vs. Anderson*, 2000 Guam 8 ¶ 6 (citation omitted)(quotations in original). "Courts use rule 60(b)(6) relief sparingly "as an equitable remedy to prevent manifest injustice" and grant relief "only where extraordinary circumstances prevent a party from taking timely action to prevent or correct an erroneous judgment." *Merchant v. Nanyo Realty*, 1998 Guam 26 ¶ 9 (citation omitted).

At this point, the Court must make the observation that there appears to be a misunderstanding of the application of Rule 60(b). Guam's Rule 60(b) was adopted from Rule 60(b) of the Federal Rules of Civil Procedure. *Brown v. Kodak*, 2000 Guam 30 ¶ 14. The subsections of the rule are mutually exclusive. *Id*. (citation omitted). Thus, if the circumstances alleged fall into any of the other subsections allowing for set aside then relief under subsection (6) cannot be had. *Id*. If, as Plaintiff argues, the motion is appropriate on grounds of mistake, inadvertence and in the interests of justice in aiding the decisional process of the Court then, at

face value, relief is inappropriate under subsection (b)(6); and that relief is pursued under Rule 60(b)(1). *See Brown supra.*

Rule 60(b)(1) relief is also an extraordinary procedure which seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts. *Jennings v. Rivers*, 394 F.3d 850, 856 (10th Cir. 2005)(citations omitted). Thus, the rule should be liberally construed when substantial justice will be served. *Id.* Relief pursuant to Rule 60(b)(1) can be premised on mistake, surprise, inadvertence or excusable neglect by the court or counsel. 11 Wright and Miller, Federal Practice and Procedure, § 2858 (2d ed.).

Plaintiff's motion fleshes out the argument that was made at the hearings on the matter by providing authority to buttress its claim that the underlying cause of action in this case arises from the Consumer Protection Act and that the MMMA has no applicability. With regard to the case authority involving the Consumer Protection Act, these are matters which should have been brought to the Court's attention sooner. On this basis alone the Court would be well within its rights to disregard the motion and its accompanying memorandum of law. However, although not extensively discussed at the hearing, the Court does acknowledge that Plaintiff's attorney also asserted that the cause of action arose from application of the Consumer Protection Act.

Therefore, the Court, in the interests of substantial justice and to assure these small claims litigants that their perspectives are important, will proceed to consider the authority to determine whether the fact that the instant complaint was brought pursuant to the Consumer Protection Act prevents the application of the MMMAA.

**III.**

First, as analyzed by the Court in its Decision and Order staying the proceedings and ordering the parties to engage in the arbitration prescribed in the MMMAA, it was determined:

> The MMMAA applies to a claim, whether in tort, contract, or otherwise, if it is a controversy between the patient, his relatives, his heirs-at-law or personal representative or any third party or other party, and the health professional and is based on malpractice, tort, contract, strict liability, or any other alleged violation of a legal duty incident to services rendered by the health professional. *See* 10 GCA §10102.

Decision and Order at p.4 (Dec. 26, 2013). Thus, it concluded that the plain language of the statute indicated that no matter what the underlying action was, be it malpractice, tort, contract, strict liability, or any other alleged violation of a legal duty incident to the services rendered by the health professional, the parties had to first follow the directive of mandatory arbitration under the MMMAA. Furthermore, if an action had already been filed in the Superior Court and it was found that the issue involved in the suit was referable to arbitration; then a stay of proceedings is required. *Id.*

Because the Plaintiff is challenging this conclusion, then it must logically follow that in order for Plaintiff to have successfully resisted the mandate of the MMMAA he must have either shown: (1) that the underlying lawsuit had nothing to do with the services rendered by the Defendant; or (2) that the remedies afforded by the Consumer Protection Act are exclusive regardless of whether it arises from the services rendered by the Defendant.

## IV.

Whether there can be any doubt that the underlying lawsuit in this case did not involve the medical services rendered by the Defendant cannot be seriously maintained. Plaintiff essentially has argued that his legal rights as a consumer were violated because he was injured by the improper delivery of veterinary medical services by Defendant to their client (not "patient"), the Plaintiff. Plaintiff asserts that it is an unfair and deceptive business practice to refuse to return

his initial down-payment even though the Defendant did not perform as promised; and that in fact, the Defendant is demanding payment for services he never requested.[3]

## V.

Plaintiff does maintain however, that the complaint filed in this case does not contain a cause of action based on the Medical Malpractice Act; but rather it is a cause of action under the Consumer Protection Act. Plaintiff states that this small claims lawsuit is authorized by 5 GCA §32111(a) which states:

> Any prohibited act or practice that is specifically enumerated in this chapter, including but not limited to acts of omission, failure to honor any warranty or agreement with the consumer, or committing any false, misleading or deceptive acts or practices by a merchant to induce a consumer to purchase goods or services.

5 GCA §32111(a). He alleged that the Defendant qualifies as a "merchant" as defined under the Act:

> *Merchant* means a person who deals in goods or services of the kind involved in the transaction or otherwise by his occupation or statements holds himself out as having knowledge or skill peculiar to the practices, services or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skills In addition, a person who purports to be a merchant or holds himself out as a merchant is a merchant for purposes of this section.

5 GCA §32103(j)(emphasis in original). And that the Plaintiff qualifies as a "consumer" as defined under the Consumer Protection Act. *See* 5 GCA §32103(d) and (k). And, citing to 5 GCA §32201, that a violation of the Consumer Protection Act requires that an unlawful act or practice took place in the conduct of trade or commerce. As succinctly articulated by the Plaintiff, he is alleging that there "was an implied warranty of competence by Defendants in their demand and acceptance of Plaintiff's $200 payment for veterinary medical services rendered to

---

[3] The Defendant's claim for the remaining balance of the veterinary bill was asserted by counter-claim. However, because of the Defendant's non-appearance at the answering for that claim, it was appropriately dismissed and the Defendant has not attempted to collect it.

his pet dog." *See* Memorandum of Law Supporting Motion, at p.5 (Dec. 30, 2013). "By the totally incompetent actual rendering of those impliedly warranted services by Defendants, that warranty was breached." *Id.*

In support of the argument, Plaintiff cites authority for the prosecution of consumer cases against physicians. *See Chapman v. Wilson*, 826 S.W.2d 214 (Tex.App. 1992); *Sorokolit v. Rhodes*, 889 S.W.2d 239 (Tex. 1994); *and Wililiamson v. Amrani*, 152 P.3d 60 (Kan. 2007)(*overruled by statute as recognized in Kelly v. VinZant*, 197 P.3d 803 (Kan. 2008)). In *Chapman*, the plaintiff sued defendants for negligence during and after the extraction of wisdom teeth, breach of implied warranty that their services would be performed in a good and workmanlike manner, and various misrepresentations such as: (1) that they were specialists in the extraction of wisdom teeth; (2) that general anesthesia would be administered; (3) that defendants were competent to administer general anesthesia; and (4) that no further treatment after the extractions would be necessary. Plaintiff asserted that these misrepresentations constituted violations of the Deceptive Trade Practices Act ("DTPA"). *Chapman*, 826 S.W.2d at 215. The trial court granted summary judgment for the defendant on all three of plaintiff's causes of action. *Id.* The appellate court affirmed in part and reversed and remanded in part. *Id.* The court of appeals found that because the plaintiff's experts were precluded from participating in the matter; he would not have been able to establish the negligence claim and that summary judgment was appropriate. *Id.* at 217. With regard to the breach of implied warranty, the appellate court affirmed summary judgment on the basis that Texas did not recognize such a warranty but also, as in the negligence action, the inability to utilize expert testimony similarly affected this claim and summary judgment was appropriate. *Id.* 217-218. The reviewing court further found that the Texas Medical Liability & Insurance Improvement Act ("Medical Liability Act") specifically exempted from the DTPA actions against health care providers based on

negligence. *Id.* at 219. However, because the plaintiffs alleged that the defendants made knowing, as opposed to negligent, misrepresentations that the DTPA thus applied and that summary judgment should not have been granted. *Id.*

In *Sorokolit*, the Supreme Court of Texas addressed the issue of whether the same provision of the Texas Medical Liability Act precluded an action for knowing misrepresentation or breach of an express warranty under the DTPA. *Sorokolit*, 889 S.W. 239, 240. In that case, plaintiff sued the doctor for medical malpractice, breach of implied and expressed warranties, and knowing misrepresentations incidental to a breast augmentation surgery. The trial court had ruled that the plaintiff could not sue under the DTPA; however, the court of appeals reversed in part and remanded, holding that the Medical Liability Act did not bar the DTPA claims for breach of express warranty or claims based on knowing misrepresentation. *Id.* at 241. The Texas Supreme Court concluded that the Medical Liability Act only precluded a DTPA suit against a physician for negligence – "that is, a suit founded on a breach of the accepted standard of medical care." Id. at 242. It observed that:

> There can be no DTPA claim against a physician for damages for personal injury or death if the damages result, or are alleged to result, from the physician's negligence; however, if the alleged DTPA claim is not based on the physician's breach of the accepted standard of medical care, section 12.01(a) (of the Medical Liability Act) does not preclude suit for violation of the DTPA. Thus, the underlying nature of the claim determines whether section 12.01(a) prevents suit for violation of the DTPA. Claims that a physician or health care provider was negligent may not be recast as DTPA actions to avoid the standards set forth in the Medical Liability and Insurance Improvement Act.

889 S.W.2d at 242 (parenthetical added). The plaintiff's claim was that the physician had guaranteed the results of his surgery and that he knowingly breached his express warranty of a particular result and knowingly misrepresented his skills and the results he could achieve. *Id.* The court held that the Medical Liability Act did not preclude suits under the DTPA for knowing

misrepresentation or breach of express warranty in cases in which a physician or health care provider warrants a particular result. *Id*. at 243.

Finally, in *Williamson*, the Kansas Supreme Court found that the language of the Kansas Consumer Protection Act (KCPA) was broad enough to encompass a claim regarding the providing of medical care or treatment services brought by a patient against a physician for a violation of the KCPA and that the summary judgment that was granted in favor of the defendant must be reversed. *Williamson*, 152 P.3d 60, 72. The precise issue before the court was whether the KCPA applies to a physician's professional conduct in providing treatment to a patient, specifically, "whether a physician can be found to have engaged in deceptive acts and practices in violation of K.S.A. 50-26 and unconscionable acts and practices in violation of K.S.A. 50-627 by knowingly making misrepresentations regarding the proposed medical treatment of willfully concealing or failing to make disclosures of material facts." *Id*. at 62. The Kansas Supreme Court found that as an issue of statutory construction, the plain language of the KCPA is broad enough to encompass the providing of medical care and treatment services within a physician-patient relationship. *Id* at 65. It reasoned that the physician is, in the ordinary course of business, a seller of or supplier of services and that a patient is a consumer of those services and that the sale of those services is a consumer transaction all covered under the KCPA. *Id*. (citations omitted). Nothing in the KCPA explicitly excludes physicians or other professionals from the scope of its coverage. *Id*.

Additionally, in rejecting the defendant's contention that other courts which have dealt with the issue have found that only the entrepreneurial activities of a physician fall under the consumer protection laws; the Kansas court noted that the language common in those cases contained the restriction that the consumer protection actions are applicable when the activities are engaged in "trade or commerce" and that the KCPA contained no such language. *Id*. 69-70.

The court also rejected the idea that that the case could not proceed under the KCPA merely because a common law cause of action exists for medical malpractice. *Id.* at 70-71. It found that nothing prohibits the legislature from creating a statutory remedy in situations where a common-law remedy may be available. *Id.* Finally, the defendant argued that the legislature had set forth a comprehensive statutory scheme specifically for litigation of medical malpractice cases which made clear that the legislature did not intend for claims against physicians to be remedied under the KCPA. *Id.* The Supreme Court felt otherwise and found that while the legislature had passed various pieces of legislation affecting various aspects of medical malpractice litigation, it has not passed any legislation which precludes coverage for medical malpractice claims under the KCPA. *Id.* (citing *Chapman v. Wilson*, 826 S.W.2d 214 (Tex.App. 1992)).

## VI.

Guam's Deceptive Trade Practices - Consumer Protection Act is contained in Chapter 32 of Title 5 Guam Code Annotated. *See* 5 GCA §§32101 *et seq*. "The general purpose of the Consumer Protection Act is "to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty, and to provide efficient and economical procedures to secure such protection," and shall be liberally construed in favor of the consumer." *Mendiola v. Bell*, 2009 Guam 15, ¶ 15 (citing 5 GCA §2108(a))(quotations in original). As provided in the Act,

> **§ 32201. Deceptive Trade Practices Unlawful.** (a) False, misleading, or deceptive acts or practices, including, but not limited to those listed in this chapter, are hereby declared unlawful and are subject to action by the Attorney General or any person as permitted pursuant to this chapter or other provisions of Guam law. A violation consisting of any act prohibited by this title is in itself actionable, and may be the basis for damages, rescission, or equitable relief. The provisions of this chapter are to be liberally construed in favor of the consumer, balanced with substantial justice, and violation of such provisions may be raised as a claim, defense, crossclaim or counterclaim.
>
> (b) The term false, misleading, or deceptive acts or practices includes, but is not limited to, the following acts by any person or merchant, which acts are hereby

prohibited and declared illegal and contrary to public policy if committed by any person or merchant. . . .

5 GCA §32201. This subsection proceeds to list twenty-nine separate examples of prohibited practice. *Id.* The Guam Supreme Court has noted that this code section offers a guideline for what constitutes deceptive unlawful trade practices; however, it is not all encompassing. *Guam v. Marfega Trading Co., Inc.*, 1998 Guam 4, ¶10. As instructed by the Guam Supreme Court, courts interpreting the Consumer Protection Act shall be guided by the interpretations given by the U.S. Federal Trade Commission and the Federal Trade Act, and may consider relevant decisions of federal courts. *Id.* The court stated:

> Case law has established a three-part test for determining whether a practice is deceptive pursuant to the Federal Trade Commission Act (FTCA). The FTC must show the following: (1) there is a representation, omission or practice; (2) the representation, omission or practice is likely to mislead consumers acting reasonably under circumstances; and (3) the representation, omission or practice must be material. *FTC v. Patriot Alcohol Testers, Inc.*, 798 F.Supp. 851, 855 (D. Mass. 1992); *FTC v. Wilcox*, 926 F.Supp. 1091, 1098 (S.D. Fla. 1995). *See FTC v. Pantron I. Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994), *cert. denied*, 514 U.S. 1083 (1995). Application of the FTC test to the facts of this case for each representation, omission or practice alleged to be misleading drives this analysis.

*Id.* at ¶11.

In *Mendiola*, the Guam Supreme Court found that the Consumer Protection Act applied in a case involving a suit against the seller-developer of land by the purchasers of subdivided properties that did not have sufficient drainage to protect against flooding. 2009 Guam 15, ¶¶22-23. It found that the defendants had failed to provide storm drainage for the properties, as required by law, and that they failed to inform the plaintiffs of that fact. *Id.* Further, that this omission was material in that it affected the very quality and soundness of the lots that the plaintiffs sought to purchase and build their homes. *Id.* Finally, it found that the plaintiffs were reasonable in assuming that all relevant subdivision laws had been complied with and that they therefore had acted reasonably under the circumstances. *Id.*

**VII.**

The issue before this Court is whether the Plaintiff's cause of action based upon the Deceptive Practices – Consumer Protection Act, but which implicates the Defendant's rendition of veterinary services, insulates the matter from the mandatory arbitration provision of the MMMAA.

From the authorities cited by the Plaintiff, it is obvious that there is a split of authority on whether consumer protection statutes even apply to professional services like the practice of medicine, the practice of law, and other professions. *See Williamson v. Amrani*, 152 P.3d at 67-69. (citations omitted). Some of this authority consists of express statutory exemptions for professional services. *Id.* at 67-68. *See e.g.*, MD. CODE ANN., COM. LAW §13-104 ("This title does not apply to: (1) The professional services of a certified public accountant, architect, clergyman, professional engineer, lawyer, veterinarian, insurance company authorized to do business in the State, insurance producer licensed by the State, Christian Science practitioner, land surveyor, property line surveyor, chiropractor, optometrist, physical therapist, podiatrist, real estate broker, associate real estate broker, or real estate salesperson, or medical or dental practitioner"). In fact, *Williamson* was effectively overruled when the Kansas legislature specifically excluded medical professionals from its consumer protection act coverage. *See Kelly v. VinZant*, 197 p.3d 803, 811 (Kan. 2008)(citation omitted).

While in other states, the question of whether attorneys, physicians, and other learned professionals fall within the coverage of their consumer protection or deceptive trade practice acts has been left to the courts and upon various rationales. *Williamson*, 152 P.3d at 68. (discussing *Quimby v. Fine*, 724 P.2d 403 (Wash. 1986)(plaintiff's negligence claim did not fall within the scope of the Washington consumer protection act because it related to the actual

competence of the medical practitioner but plaintiff's lack of informed consent claim could fall within the CPA if it related to the entrepreneurial aspects of the medical practice) *and other cases*). *See also Sorokolit v. Rhodes*, 889 S.W.2d 239 (Tex. 1994) *and Chapman v. Wilson*, 826 S.W.2d 214 (Tex.App. 1992)(Texas Medical Liability and Insurance Act precludes a consumer protection action founded upon a breach of the accepted standard of care, *ie.*, negligence); *Rumbin v. Baez*, 727 A.2d 744 (Conn.App.Ct. 1999)(*citing Haynes v. Yale-New Haven Hospital*, 699 A.2d 964 (Conn. 1997)("Although physicians and other health care providers are subject to CUPTA (Connecticut Unfair Trade Practices Act), only the entrepreneurial or commercial aspects of the profession are covered, just as only the entrepreneurial aspects of the practice of law are covered by CUPTA"); *Proctor v. Chattanooga Orthopaedic Group, P.C.*, 270 S.W.2d 56 (Tenn.Ct.App. 2008)(Finding error in trial court's dismissal of plaintiff's claim that physicians group misled him to believe that a particular physician was still a part of the group and for charging plaintiff for a more expensive procedure than the one actually performed was not actionable under the consumer protection act.); *and Preston v. Stoops*, 285 S.W.3d 606 (Ark.2008)(consumer protection act not applicable to practice of law because the Supreme Court is the only entity responsible for regulating the practice of law and the professional conduct of attorneys at law).

Finally, there are cases in which a court has held that an exemption from the consumer protection statute exists for those engaged in professional services by virtue of the fact that the professions are regulated by governmental bodies. *See e.g., Gadson v. Newman*, 807 F.Supp. 1412, 1417 (C.D.Ill. 1992)('medical and legal professions are afforded immunity from the Consumer Fraud Act primarily, because, unlike other commercial services, medical and legal bodies are regulated by governmental bodies").

But the applicability of Guam's Deceptive Practice Act has never been an issue before the Court in this case. As observed by the Plaintiff, the Defendant herein did not file a motion to dismiss the case because of the Act's inapplicability. Indeed, if the Defendant had filed such a motion then the Court, in addition to analyzing the authorities herein cited, would also have to consider the fact that under the Medical Malpractice Mandatory Arbitration Act:

> The provisions of Title 5, Chapter 32, Guam Code Annotated, entitled, Deceptive Trade Practices - Consumer Protection Act, shall not be applicable to this chapter and to the extent any of the provisions of this chapter are inconsistent or conflict with the provisions of the Deceptive Trade Practices - Consumer Protection Act or any other provision of law, the terms of this chapter shall prevail and control.

10 GCA §10146.

What is at issue is whether the MMMAA has no applicability to this Deceptive Trade Practice action. The Plaintiff cites to no authority that a consumer protection cause of action precludes the application of the MMMAA. To the contrary, the remedies provided by the Guam Consumer Protection Act are not exclusive. *See* 5 GCA §32105. The remedies are in addition to any other procedures or remedies for any violation or wrongful conduct provided for in any other law. *See* 5 GCA §32105(a). Merely alleging that a plaintiff is suing under the Consumer Protection Act does no more than indicate a preference for seeking redress (and because of the Attorney General's involvement a narrowing of the remedies available) from a defendant. However, if viewed as an attempt to circumvent the MMMAA, it has been held that "claims that a physician or health care provider was negligent may not be recast as DTPA actions to avoid the standards set forth in the Medical Liability and Insurance Improvement Act." *Sorkolit v. Rhodes*, 889 S.W.2d 239, 242 (Tex.1994).

Because of the lack of authority or argument to the contrary, the Court is unable to conclude that invocation of the Act translates to the preclusion of the mandatory arbitration

provisions of the MMMAA especially since the whole reason for Plaintiff's claim against the Defendant herein was the alleged incompetence of the veterinary services that were provided.

## CONCLUSION

Therefore, the Court concludes that even if it had the benefit of Plaintiff's additional pleadings and the authority cited therein, the Plaintiff would still not be entitled to relief from its determination that the mandatory arbitration provision of the MMMAA applies to this case and that the matter be stayed.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that, if it has not already been done, either Defendant or Plaintiff submit an application for stay of the instant proceedings and that the parties proceed as provided by the Medical Malpractice Mandatory Arbitration Act.

Dated this _____ day of _____ MAY - 9 2014 _____, 20_____.

_____
Honorable Alberto E. Tolentino,
MAGISTRATE JUDGE,
SUPERIOR COURT OF GUAM